UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JONATHAN D. EADS,

      Plaintiff,

v.                       Case No. 2:10-cv-00136

WEXFORD HEALTH SOURCES,
SUBHASH GAJENDRAGADKAR,
DAVID PROCTOR, TRISTAN TENNEY,
DAVID BALLARD, ADRIAN HOKE,
JIM RUBENSTEIN, EMIL A. DAMEFF,
KIMBERLY LAUDER, GROVER ROSENCRANCE,
and CHARLENE SOTAK, each individually
and in their official capacities,

      Defendants.


## PROPOSED FINDINGS AND RECOMMENDATION

On February 10, 2010, Plaintiff filed a Complaint under 42 U.S.C. § 1983, asserting that the defendants have violated his right to receive adequate medical treatment, as guaranteed by the Eighth Amendment to the United States Constitution, while he has been incarcerated at two different West Virginia Division of Corrections facilities.  (Docket sheet document # 2).  This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

The original Complaint drew the pending Motions to Dismiss (## 26 and 28).  Subsequent to the filing of the Motions to Dismiss, however, Plaintiff moved for leave to file an Amended Complaint, which is a more detailed version of his original Complaint and adds four additional defendants (# 33).  On January 27, 2011, the undersigned granted Plaintiff leave to file his Amended Complaint (# 39).

This Proposed Findings and Recommendation will address the pending Motions to Dismiss filed by the defendants named in the original Complaint.  However, pursuant to 28 U.S.C. § 1915A, the undersigned will also conduct an initial screening of the allegations in the Amended Complaint, which incorporates the four new defendants.

### PLAINTIFF'S ALLEGATIONS AND REQUEST FOR RELIEF

The following summary of Plaintiff's allegations is derived from the Amended Complaint, which as noted above, is a more detailed version of his original Complaint[1]:

From approximately September of 2007 until November 5, 2009, Plaintiff was housed at the Huttonsville Correctional Center

_____

[1] It is apparent that Plaintiff drafted his Amended Complaint after receiving his medical records which were attached as exhibits to the Motion to Dismiss filed by defendants Wexford Health Sources, Gajendragadkar, Proctor and Tenney (hereinafter "the Wexford Defendants") (# 29).  To avoid confusion, the undersigned will reference only the paragraphs in the Amended Complaint and not the page citation to the medical records, which Plaintiff has included in each paragraph of the Amended Complaint.

("HCC").[2]   While at HCC, Plaintiff developed swelling and discoloration around his testicular area.  (# 40, ¶ 19-20). Plaintiff alleges that he was in severe pain and had difficulty urinating and breathing.  (<u>Id.</u>, ¶ 20).

On or about September 29, 2008, Plaintiff filed a request for medical services seeking an examination of his testicular condition by Dr. David Proctor, the facility's primary care physician.  (<u>Id.</u>, ¶ 21).  On October 1, 2008, Plaintiff was evaluated by defendant Tristan Tenney, the Health Services Administrator at HCC, who documented that Plaintiff complained of a swollen testicle, which he claimed to have had for two to three months and that "[s]ometimes it gets worse." (<u>Id.</u>, ¶ 22).  Tenney further observed that Plaintiff's "left testicle is much larger and asymmetrical [sic] with right," recorded that the plaintiff complained of "tenderness to touch," and personally observed that the plaintiff had a "large, linear area above testicle. [A]rea is 'squishy.'" (<u>Id.</u>)

Plaintiff was seen by a physician on or about October 13, 2008, where the same observation of a swollen testicle was

_____

    [2] HCC is located within the jurisdiction of the United States District Court for the Northern District of West Virginia.  Because Plaintiff was incarcerated at the Mount Olive Correctional Complex ("MOCC"), which is within this court's jurisdiction, during the latter time frame of Plaintiff's Complaint, and because Plaintiff has made allegations concerning a continuing medical condition against the Wexford Defendants and the Commissioner, the undersigned will address all of Plaintiff's allegations.

observed.  (Id., ¶ 23).  Plaintiff's Amended Complaint contains no allegations about his condition or any treatment received between October 13, 2008 and June 4, 2009.

According to the Amended Complaint, on or about June 4, 2009, Plaintiff requested another examination by Wexford personnel, and he reported that "[t]here is something wrong with my left testicle. I've seen the doctor about it and they said it was normal but I'm starting to get sharp pains up in my abdomen and into my penis.  I can't stand up for two minutes without having pain."  (Id., ¶ 24).

Plaintiff further states that, around 10:00 a.m. on June 7, 2009, he went to the medical unit and said that his pain was "unbelievable."  He was advised that an appointment with the doctor was scheduled for June 12, 2009.  (Id., ¶ 25).

Later that same day, Plaintiff said his pain became so intolerable that he returned to the medical unit, at which time he stated, "My sack [sic] is black.  When I breath [sic] in it feels like someone just kicked me in the nuts.  I can't even walk."  (Id., ¶ 26).  It was further documented that the plaintiff's left "testical [sic; testicle] dipped farther than the right" and that veins in the region were "dark."  (Id.)  Plaintiff stated that he could not wait until June 12th to see a doctor and that something more needed to be done to help him cope with his "chronic pain." (Id.)

On June 8, 2009, Plaintiff returned to the medical unit, where he was seen by a nurse.  He told the nurse that his pain was 8.5 on a scale of 1 to 10.  At that time, Plaintiff had been taking 800 mg of Motrin.  (<u>Id.</u>, ¶ 27).  Plaintiff's Amended Complaint states that he informed the medical personnel that he had "a [doctor] appointment Friday, but I need something for the pain.  The Motrin 800 mg is not helping the pain.  When I breath [sic] it feels like someone is kicking me down there.  I'm getting sharp pains right here - pointing to [left] lower abdomen."  (<u>Id.</u>)

That same date, Plaintiff filed an administrative grievance (No. B2-HCC-B2-199) stating that he was experiencing "excruciating" pain and discomfort, and pleading for relief.  The grievance stated in part:

> I am being neglected medical attention.  I have followed all procedures and I[']m still being neglected and deprived.  I have orally [complained] and written about my [testicle] problems and the pain and discomfort it [is] causing.  I have seen the doctor, Oct[.] of last year.  He stated he can[']t help me.  This is a[n] outside matter, that[] needs attention ASAP.  I am struggling with [pain] and discomfort, and [it is] causing problems with my breathing and urinating (<u>id.</u>, at 2).

(<u>Id.</u>, ¶ 28).

Plaintiff's grievance was received on June 9, 2009, and on June 10, 2009, defendant Tenney responded, and Plaintiff received the response on June 11, 2009.  (<u>Id.</u>, ¶ 29).  Plaintiff's Amended Complaint does not state what Tenney's response was, but the grievance was attached to the Motion to Dismiss filed by the

5

medical defendants.   Tenney's response was:

> Mr. Eads,
>
> You have been examined and have had your problem explained to you.  You have, according to the chart, a benign varicocele, which is simple [sic; simply] a varicose vain [sic; vein] of the testicle.  Normal treatment of these common problems is to use a jock strap, reduce sports and weight lifting, and take tylenol, motrin, etc. when needed.  The access to care you are describing works perfectly, as you have seen the nurses several times and physician; proving that no care was ommitted [sic; omitted] and all problems are being addressed.

(# 29 at 3).

Plaintiff appealed Tenney's response, which he claims consciously disregarded his severe pain, to the Warden (defendant Hoke).  Although the grievance was stamped "received" on June 12, 2009, it apparently was mis-filed, and Plaintiff did not receive a response until July 1, 2009.  The grievance was denied on that date by defendant Grover Rosencrance, Deputy Warden at HCC, who signed off on the grievance for defendant Hoke.  (# 29 at 4).  Plaintiff alleges that the grievance was denied without having conducted an investigation.  (# 40, ¶ 30).

Plaintiff then appealed the grievance to the Commissioner, defendant Rubenstein.   The grievance was denied for the Commissioner by defendant Charlene Sotak, the Inmate Grievance Coordinator, by memorandum dated November 3, 2009.  Again, Plaintiff alleges that this denial was made without any investigation.  (Id., ¶ 31).

In the meantime, on June 10, 2009, Plaintiff returned to the medical unit to again complain about his testicular pain. (Id., ¶ 32). According to Plaintiff's Amended Complaint, on that date, the medical records noted that he was still having pain, that "starts under umbilicus to the [left] quadrant and radiates from groin area to left testicle and left thigh." (Id.) Plaintiff described his pain as 8½ out of 10 and stated that his left testicle sometimes turns purple. (Id.)

The Amended Complaint contains no allegations about Plaintiff's condition or medical treatment between June 10, 2009 and October 29, 2009. On October 29, 2009, a progress note documented that Plaintiff's "pain has gradually gotten worse over several months" and that plaintiff rated the severity of his pain at "9 sometimes 10." Plaintiff requested "medication for pain as well as an appointment with the physician." (Id., ¶ 33).

Plaintiff was seen by a doctor on October 28, 2009. (Id., ¶ 34). The Amended Complaint does not allege what happened during that examination or which physician he saw. Plaintiff completed another medical request on November 1, 2009. (Id., ¶ 35). However, on November 5, 2009, Plaintiff was transferred to MOCC. (Id., ¶ 36).

On November 13, 2009, Plaintiff completed a request to see medical personnel at MOCC about his testicle. (Id., ¶ 37). Plaintiff sent another request on November 14, 2009. (Id., ¶ 38).

7

The Amended Complaint states that, on November 23, 2009, Plaintiff sent another medical request stating that he was "in a lot of pain" and needed to be seen quickly. (<u>Id.</u>, ¶ 41). Plaintiff states that the response section of this medical request documented that Plaintiff's condition warranted urgent doctor sick call. (<u>Id.</u>)

Plaintiff's Amended Complaint further states that, despite repeated requests to see a doctor, and the acknowledgment that the condition warranted urgent attention, he was not actually seen until December 7, 2009. (<u>Id.</u>, ¶¶ 40-43). At that time, Plaintiff reported to the evaluating nurse that he continued to experience pain and swelling on the left side of his testicles and it was noted that his left testicle was enlarged. (<u>Id.</u>)

On or about December 10, 2009, Plaintiff filed a grievance, No. 09-MOCC-PA-230, directed to his unit manager. The grievance stated:

> For more than a year now, I have been suffering daily extreme pain in my left testical [sic; testicle], which is swollen and discolored. The doctor at Huttonsville diagnosed it as a varicose vein, but the doctor at MOCC disagrees. Whatever the cause, I need to see a specialist immediately to determine the cause of this condition and treatment to relieve this terrible pain.

(<u>Id.</u>, ¶ 44). However, on December 10, 2009, the same date that he filed his grievance, Plaintiff was seen by the doctor at MOCC. At that time, it was documented that Plaintiff's pain and swelling in the testicle area became "worse after standing up for a while and

8

walking/activity." (Id., ¶ 48).

On or about December 15, 2009, Plaintiff received a response to his grievance from his unit manager which stated, "You will be seen by the regional doctor to be evaluated for an offsite referral. If necessary, an appointment will be scheduled after that." (Id., ¶ 45). On January 11, 2010, Plaintiff received a response from the Warden to his appeal of the decision on his grievance. Warden Ballard granted the grievance to the extent specified in the initial response. Plaintiff alleges that this decision was made without any investigation as to why Plaintiff was allowed to suffer in constant extreme pain for more than a year. (Id., ¶ 46). Plaintiff further alleges that, on February 2, 2010, his appeal to the Commissioner was also summarily affirmed by Charlene Sotak without investigation. (Id., ¶ 47).

Plaintiff was next seen on January 6, 2010. Plaintiff reported that it "feels like somebody constantly kicking me in my privates - Veins on left side of my sack [sic] keep swelling - Onset about a year and a half - Once on my feet for a while, I have knots in my sack [sic]." (Id., ¶ 49).

Plaintiff was again seen in medical on January 12, 2010. (Id., ¶ 50). Plaintiff reported that the pain had progressively gotten worse, and described the pain as a 10 out of 10. Plaintiff's left testicle was again observed to be bigger than the right, and it was extremely tender. (Id.)

9

On or about January 19, 2010, Plaintiff was referred off-site for an ultrasound at Montgomery General Hospital.  The ultrasound report, prepared by a radiologist, Dr. Samuel Davis, indicated that "[t]here is a 2.0 mm diameter cyst at the head of the left epididymis," and a "[p]rominent vericocele [footnote omitted]... on the left."  Plaintiff was diagnosed with "severe pain" in and around his "left testicle."  (<u>Id.</u>, ¶ 51).  Plaintiff alleges that, during his examination, he was advised that "something need[ed] to be done" about the condition.  (<u>Id.</u>)

On January 21, 2010, Plaintiff returned to the medical unit at MOCC and stated that the prescribed treatment of ice, aspirin and anti-inflammatory medication was not working to treat his "constant pain."  (<u>Id.</u>, ¶ 52).

On January 22, 2010, Plaintiff consulted with a physician's assistant, who acknowledged the results of the ultrasound, and despite his acknowledgment that Plaintiff was experiencing genuine pain, he continued Plaintiff's course of treatment.  (<u>Id.</u>, ¶ 53). Plaintiff further alleges that, from approximately January 18, 2010 to January 25, 2010, his pain was so severe that he could not walk and was prevented from going to the dining hall to receive his meals.  (<u>Id.</u>, ¶ 54).

On January 25, 2010, Plaintiff returned to the medical unit and informed defendant Kimberly Lauder that the treatment he was receiving was not helping and that he was having trouble urinating

because of his condition.  Plaintiff was placed into the prison's infirmary for observation.  (<u>Id.</u>, ¶ 55).

On January 27, 2010, Plaintiff was seen by defendant Dameff and was allegedly told that "no intervention is needed at this time." (<u>Id.</u>, ¶ 56).  A subsequent entry in his medical records, however, indicates that, when Plaintiff was released from the infirmary to the general population, "distress [was] noted." (<u>Id.</u>)

Plaintiff again reported his continued severe pain to the medical staff on February 10, 2010.  Plaintiff's Amended Complaint further states:

> After officials had refused to provide surgery or any other means of remedying the actual cause of the pain, it was clear that the only recourse remaining available to the plaintiff was medication which, he hoped, would at least mitigate the symptomatic pain.  The healthcare personnel observed that the plaintiff was "walking [with] one leg stiff" and reported that he was experiencing "constant sharp pain in testicles," and referred the plaintiff again to the physician's assistant.

(<u>Id.</u>, ¶ 57).

Plaintiff's Amended Complaint indicates that he was again seen by the physician's assistant on February 12, 2010.  At that time, Plaintiff reported "continued testicular pain," but further reported "no change in size of cyst or vericocele." Plaintiff reported that he was experiencing increased pain, despite the proposed treatment of scrotal support, icing the scrotum, and taking Motrin as directed.  Plaintiff requested "something stronger for the pain." It was noted that he walked with his legs apart,

11

evidencing the pain he was in.  (<u>Id.</u>, ¶ 58).

Plaintiff's Amended Complaint further states:

> At some point approximately within the first quarter of the year 2010, the plaintiff was expressly instructed by an unknown employee of Wexford Health Sources at MOCC to cease coming to the medical unit seeking medical treatment for the condition, that nothing further would be done to relieve him of the resulting constant severe pain.

(<u>Id.</u>, ¶ 59).

Plaintiff's Amended Complaint alleges that each of the defendants were aware of Plaintiff's serious medical condition, and that he was in constant severe pain, due to his repeated oral and written complaints and requests for treatment.  Plaintiff's Amended Complaint further states that "[e]ach of the defendants recognized that their individual actions were insufficient to mitigate the risk [] that plaintiff would continue to suffer constant severe pain arising from those serious medical needs, but consciously disregarded that risk, recklessly taking only grossly inappropriate and ineffective measures in relation thereto."  (<u>Id.</u>, ¶¶ 62-63).

Plaintiff's Amended Complaint further alleges that, through additional discovery he would likely have evidentiary support to allege that defendant Wexford Health Sources has official customs, policies, practices and procedures that result in deliberate indifference to prisoners' serious medical needs.  (<u>Id.</u>, ¶¶ 64-67).

Plaintiff's Amended Complaint alleges that the conduct of the defendants violated his Eighth and Fourteenth Amendment rights, and

also constituted the tort of negligence. (Id., ¶¶ 74-81). Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages from each of the defendants. (Id., ¶¶ 82-87).

## DEFENDANTS' MOTIONS TO DISMISS

On May 27, 2010, defendants Ballard, Hoke, and Rubenstein filed a Motion to Dismiss Complaint (docket sheet document # 26) and a Memorandum of Law in support thereof (# 27). On June 3, 2010, defendants Wexford Health Sources, Inc., Gajendragadkar, Proctor, and Tenney filed a Motion to Dismiss Complaint (# 28), with supporting exhibits (# 29), and a Memorandum in support thereof (# 30).

In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case.

13

The Court wrote:

> Two working principles underlie our decision in
> *Twombly*. First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions. Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. [*Twombly*, 550
> U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes
> of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound
> to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted). Rule 8
> . . . does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss. *Id.*, at 556. *
> * *
>
> In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether
> they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

Both of these motions were filed before Plaintiff filed his

Amended Complaint, which adds more detailed allegations and

includes Emil Dameff, Kimberly Lauder, Grover Rosencrance and

Charlene Sotak as defendants. However, pursuant to the provisions

of 28 U.S.C. § 1915A, the court screens each case in which a

prisoner seeks redress from a governmental entity or officer or

employee of a governmental entity. On review, the court must

dismiss the case if the complaint is frivolous, malicious, fails to

state a claim upon which relief can be granted, or seeks monetary

14

relief from a defendant who is immune from such relief.   The allegations in Plaintiff's Amended Complaint will be reviewed under this standard.

## ANALYSIS

### A.   Deliberate indifference standard.

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free of cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component). <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>see also</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).   Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.   <u>Gaudreault v. Munic. of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990); <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008) (quoting <u>Henderson v. Sheahan</u>, 196 F.3d 839, 846 (7th Cir. 1976)).

The subjective component of "deliberate indifference" sets a high bar to recovery.   In <u>Iko</u>, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). ***

This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context. First, *actual knowledge of the risk of harm* to the inmate is required. <u>Young v. City of Mt. Ranier</u>, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also* <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it."). Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient*" to mitigate the risk of harm to the inmate arising from his medical needs. <u>Parrish</u>, 372 F.3d at 303 (emphasis added).

535 F.3d at 241.

## B. The Wexford Defendants.

The Motion to Dismiss filed by the Wexford Defendants asserts that Plaintiff cannot meet either the objective or subjective components of this standard. Specifically, the Wexford Defendants' Memorandum of Law, which relies heavily on the medical records provided therewith, states:

This patient was diagnosed by multiple doctors and each one has made the same diagnosis. It is clear from the note of 2/12/2010 that Dr. Dameff, Dr. Lauden [sic; Lauder] and Dr. Gajendragadkar were all in agreement that this patient should not be treated with narcotics for his condition. (Jonathan Eads Records bates 000057). The treatment has been timely and proper and the Complaint has failed to present evidence that any of these defendants failed to provide timely and proper treatment. The plaintiff cannot and does not allege that there is any evidence that the moving defendants deviated from the appropriate standard of care.

Plaintiff's Complaint does not meet the objective component set forth in <u>Wilson</u> and the Motion to Dismiss is proper. Plaintiff has also wholly failed to meet the subjective component requirement in <u>Wilson</u> and has made no allegation that can reasonably be interpreted as alleging that these Defendants are "wanton" under the facts of this case. The Complaint is silent as to any

16

allegation of wantonness regarding these defendants. This subjective component requires that the prison official[s] have actual knowledge or reckless disregard with respect to the medical condition or substantial risk of future harm to the inmate. <u>Rish v. Johnson</u>, 131 F.3d 1092 (4th Cir. 1997).

(# 30 at 9). The Wexford Defendants assert that, at most, Plaintiff has a dispute with his health care providers about the precise type of treatment that should be rendered. (<u>Id.</u> at 11).

Plaintiff filed a Consolidated Response to both of the Motions to Dismiss (# 32). Plaintiff's Response directs the court to several cases that concerned allegations of the denial of treatment for chronic pain. Addressing the objective component, the Response states:

"[T]he Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain." <u>Tordaro v. Ward</u>, 565 F.2d 48, 52 (2d Cir. 1977). <u>See also</u> <u>Brock v. Wright</u>, 315 F.3d 158, 163 (2d Cir. 2003)(chronic pain the magnitude of which probably falls somewhere between annoying and extreme, rather than only extreme pain or a degenerative condition, also suffices to meet the legal standard of a serious medical condition). "We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain. We do not, therefore, require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one." <u>Brock</u>, 315 F.3d at 163-64.

(<u>Id.</u> at 9). Turning to the subjective component, the Response asserts:

"Plaintiffs must also show the subjective component - deliberate indifference. An officer is deliberately

17

indifferent only when he 'knows of and disregards' the risk posed by the serious medical needs of the inmate." Iko, supra, quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). "The subject component therefore sets a particularly high bar to recovery." Iko, supra (citation omitted).

* * *

"This is not to say that a prisoner must establish that officials intended or desired the harm that transpired." Greeno [v. Daley, 414 F.3d 645 (7th Cir. 2005)], supra, citing Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). "Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Additionally, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.' Greeno, supra, quoting Farmer, 511 U.S. at 842 (internal citation omitted); see also McElligott v. Foley, 182 F.3d 1248, 1256 (11th Cir. 1999)(actual knowledge threshold satisfied where jury could find that defendants were aware of inmate's tremendous pain and illness at the time of incarceration, based on medical examination of inmate and inmate's "nearly constant complaints about the pain he was having").

As will be discussed in detail infra, the defendants concede that they were made aware of the plaintiff's pain on countless occasions. Given the plaintiff's repeated follow-up visits reporting that the severe pain continued to plague him, there is no doubt that the Wexford defendants recognized that there was an excessive risk that the plaintiff would remain in such pain unless more aggressive treatment was offered. "[T]here is no requirement that a prisoner provide 'objective' evidence of his pain and suffering - self-reporting is often the only indicator a doctor has of a patient's condition." Greeno, 414 F.3d at 655, citing Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996)("The fact that a condition does not produce 'objective' symptoms does not entitle the medical staff to ignore it . . . Subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition."). Yet, they consciously disregarded the risk posed to the plaintiff: They were deliberately indifferent.

(# 32 at 10-11). Plaintiff's Response also cites Chance v.

Armstrong, 143 F.3d 698, 701 (2d Cir. 1998), in which the court stated, "[w]hether a course of treatment was the product of sound medical judgment, negligence or deliberate indifference depends on the facts of the case."

In the instant case, the parties rely heavily on Plaintiff's medical records.[3]  These records are not verified and there are no sworn statements of any sort from the defendants concerning their knowledge of Plaintiff's medical condition and their treatment thereof.  Because the Wexford Defendants, in particular, rely upon information outside the four corners of the original Complaint to support their arguments, this matter is better suited to be addressed on summary judgment.

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the plaintiff.  Cooper v. Pate, 378 U.S. 546 (1964).  Taking Plaintiff's allegations as true, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has alleged that the Wexford Defendants (including defendants Dameff and Lauder, who were added in the Amended Complaint), knew he was in extreme pain and knowingly prescribed him medications that they knew to be ineffective to treat his pain. The undersigned further proposes that the presiding District Judge

---

[3]   Plaintiff's Response also questions whether the records provided by the Wexford Defendants with their motion are a complete copy of his medical records.  (# 32 at 17).

**FIND** that such allegations are sufficient to state a claim of deliberate indifference to a serious medical need.

Plaintiff also specifically alleges that Wexford Health Sources, Inc. has either tacitly authorized or condoned its employees' deliberate indifference to serious medical needs, and that Wexford has insufficient policies, customs or procedures for providing timely and adequate care for prisoners who suffer from severe pain, which has resulted in unnecessary delay in treatment and proximately caused Plaintiff to needlessly suffer additional pain.   The Wexford Defendants' Motion to Dismiss does not specifically address these claims, other than to argue that Wexford Health Sources, Inc. is not a "person" that can be sued under section 1983.

As noted by Plaintiff in his Response, "[a] private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999); see also Motto v. Corr. Med. Servs., 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007)(Johnston, J.).   (# 32 at 30-31). Plaintiff's Response further states:

> The maltreatment recounted in the plaintiff's complaint was not a single, isolated incident. Instead, he received the same deliberately indifferent care at medical units operated by Wexford at two distinct locations, from many of its employees. Accordingly, the plaintiff's complaint states a claim against Wexford sufficient to survive a motion to dismiss [footnote omitted] and the plaintiff should be permitted a

reasonable   opportunity   to   conduct   discovery   to
substantiate his well-pleaded allegations.

(Id. at 31).

It is not necessary, however, to address Plaintiff's claims
against Wexford Health Sources, Inc., unless and until Plaintiff
has established that one or more of the individual defendants was
deliberately indifferent to Plaintiff's serious medical needs.
Accordingly, those claims will not be dismissed at this stage of
this litigation, but they will not be immediately addressed in
discovery either.

    **C.   The DOC Defendants.**

Defendants Rubenstein, Ballard and Hoke (as well as defendants
Rosencrance and Sotak, who were added in the Amended Complaint)
(hereinafter "the WVDOC Defendants") are supervisory employees of
the West Virginia Division of Corrections, who had no direct
involvement in Plaintiff's medical treatment.  Prior to the Supreme
Court's ruling in Farmer v. Brennan, 511 U.S. 825, 834 (1994), the
Fourth Circuit established "the principle that supervisory
officials may be held liable in certain circumstances for the
constitutional injuries inflicted by their subordinates." Slakan
v. Porter, 737 F.2d 368, 372 (4th Cir. 1984).  A named supervisor
may be liable for acts of subordinates if the official was aware of
a pervasive, unreasonable risk of harm from a specified source and
failed to take corrective action as a result of his deliberate
indifference or tacit authorization of the offensive practice.  Id.

at 373.

Liability may attach where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 372. The relevant inquiry is whether the defendants acted "wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991). However, the Fourth Circuit has held that supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. See Miltier, 896 F.2d at 854. Thus, prison officials fulfill their duty by taking reasonable measures to ensure that an inmate receives health care. Even if the health care provider acts negligently, there is no violation of the Eighth Amendment.

The WVDOC Defendants' Memorandum of Law in support of their Motion to Dismiss states in pertinent part:

> In the present case, the Plaintiff's allegations do not rise to the level necessary to advance a claim against the WVDOC Defendants. It is clear, from the Complaint, that Plaintiff is being provided access to health care providers. See Plaintiff's Complaint generally. The WVDOC Defendants cannot be charged with second guessing the clinical decisions of the treatment providers. As the United States Court of Appeals for the Fourth Circuit has held:

>> Even assuming that the physicians' failure to provide a cardiac exam was a pervasive and unreasonable risk of harm from some specified source," see Slakan, 737 F.2d at 372, it would be an unprecedented extension of the theory of supervisory liability to charge these wardens,

not only with ensuring that Gwendolyn received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures - procedures learned during several years of medical school, internships, and residencies. <u>Miltier</u>, 896 F.2d at 856.

Similarly, in <u>Pinkney v. Davis</u>, 952 F. Supp. 1561 (M.D. Ala. 1997) (citations omitted), the court found a prison warden entitled to qualified immunity. In doing so, it reasoned:

The plaintiff attempts to make significant the fact that the prison system and its wardens are responsible for making sure that inmates receive appropriate treatment. However, there is a vast difference between making the warden responsible for the well-being of an inmate and saying he must answer to that inmate in damages for failure to provide medical treatment. The balance between the warden's duty and his liability is struck by the applicable law. [T]he warden is liable only if he participated in the constitutional violation or if a causal connection exists between his actions and the constitutional deprivations. Even if there is a causal connection, he is qualifiedly immune unless the plaintiff shows that he would have known that his actions were unlawful in light of preexisting law and the information he possessed.

* * *

The plaintiff has failed to present any evidence that the warden's actions or inactions caused the constitutional deprivation. Moreover, [the plaintiff] has pointed to no case which establishes that the warden of a correctional institution has a duty to directly supervise medical staff, to set policy for the medical staff or to intervene in treatment decisions where he is not informed by medical personnel that intervention is necessary to prevent a constitutional wrong. <u>Id.</u> at 1572, 1573.

23

Based upon the foregoing, it is clear that the Plaintiff has been provided access to health care, and, therefore, it is proper for this Court to enter an Order dismissing the WVDOC Defendants.

(# 27 at 3-4).

As noted by the WVDOC Defendants, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); Shakka v. Smith, 71 F,3d 162, 167 (4th Cir. 1995). Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. Miltier, 896 F.2d at 853.

The WVDOC Defendants' Memorandum of Law further states:

In the instant case the Plaintiff's claims against the WVDOC Defendants appear to be wholly supervisory in nature. The WVDOC Defendants cannot simply choose to accept an inmate's desired course of treatment over that of [a] physician. None of the WVDOC Defendants may practice medicine. Thus, they cannot be expected to countermand a phsycian's orders, whether right or wrong. Consequently, the Plaintiff has not set forth a sufficient exception to the prohibition against supervisory liability.

(# 27 at 5).

Plaintiff's Response asserts that the DOC Defendants have "tacitly authorized the deliberately indifferent conduct of their contracted medical personnel." (# 32 at 32). Plaintiff's Response

24

further states that "after a reasonable opportunity to engage in discovery, he will be able to show that the DOC defendants are aware of and have consciously disregarded a pervasive pattern of deliberately indifferent conduct exhibited by Wexford personnel, including that which is alleged by the instant plaintiff: that he is being left to suffer needless pain 'because of an official corporate policy or custom . . . [of providing] only the least expensive and time-consuming means of medical treatment possible.'" (Id.)

Plaintiff's Response further asserts that he is not seeking to hold the DOC Defendants liable under a theory of <u>respondeat superior</u>.  Plaintiff argues that the DOC Defendants were aware of his constant severe pain through the filing of his grievances and were themselves "deliberately indifferent to his pleas for relief" and, consequently, caused him additional pain and suffering.  (Id. at 34-35).  Plaintiff argues that "[r]eceipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions." <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985) [citations omitted], and that "[s]uch notice can . . . facilitate personal involvement in a deprivation of rights where the harm continues over a period of time . . . . [N]otification of a continuing problem . . . may have been within [the prison official's] power to remedy." <u>Wright</u>, <u>supra</u>.  (Id. at 35).

25

The WVDOC Defendants filed a Reply on August 20, 2010 (# 35). The Reply asserts in pertinent part:

> Based upon a plain reading of the Plaintiff's Complaint and other pleadings, it is clear that Plaintiff was provided with unfettered access to medical care. Rather, the Plaintiff's claim against these Defendants essentially alleges that he is not satisfied with the course of care provided by the medical Defendants. The WVDOC Defendants do not concede that the care provided by the medical Defendant to the Plaintiff was anything less than proper adequate and reasonable.
>
> Nevertheless, for the plaintiff to prevail in his action the Court would have to place the WVDOC Defendant's [sic; Defendants] in the position of second guessing the medical opinions of trained medical care professionals.

(Id. at 2).

The conduct of defendants Rubenstein, Ballard, Hoke, Rosencrance and Sotak in this matter was limited to reviewing and denying Plaintiff's grievances after confirming that Plaintiff was receiving treatment based upon the judgment of the trained medical personnel. Accordingly, these defendants fulfilled their constitutional duties and there is no basis for liability against them. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's allegations fails to state a claim upon which relief can be granted against defendants Rubenstein, Ballard, Hoke, Rosencrance and Sotak.

### D.   Plaintiff's Claim for Injunctive Relief.

Plaintiff has requested injunctive relief in the form of a "preliminary and thereafter permanent injunction compelling the

defendants to provide him with adequate care by rendering medically available treatment to prevent the plaintiff from continuing to suffer needlessly in constant severe pain."   (# 40, ¶ 84).

Plaintiff's claim for injunctive relief is only addressed in a summary fashion by the Wexford Defendants in their Memorandum of Law, which states that Plaintiff has "wholly failed to set forth any basis for . . . an injunction" and that "[t]here is no evidence to support a claim  that Plaintiff will suffer irreparable harm. (# 30 at 1).  Plaintiff's Response contends that "absent injunctive relief, it is clear that [he] will remain in nonstop, unrequited, severe pain for the foreseeable future."  (# 32 at 14).

Plaintiff is now incarcerated at the St. Marys Correctional Center ("SMCC"), which is within the jurisdiction of the United States District Court for the Northern District of West Virginia. The correctional and medical staff at SMCC are not defendants herein, and not subject to this court's jurisdiction.  Accordingly, this court cannot order prospective injunctive relief for Plaintiff under those circumstances.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Rubenstein, Ballard and Hoke (# 26).  For those same reasons, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the allegations in the Amended Complaint against

defendants Rosencrance and Sotak, pursuant to 28 U.S.C. § 1915A.

It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Motion to Dismiss filed by defendants Wexford Health Sources, Inc., Gajendragadkar, Proctor, and Tenney (# 28), and leave this matter referred to the undersigned United States Magistrate Judge for additional proceedings concerning the claims in the Amended Complaint against those defendants and defendants Dameff and Lauder. Finally, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's request for injunctive relief, without prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), the Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Synder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

<u>    January 28, 2011    </u>
             Date

Mary E. Stanley
United States Magistrate Judge